1
2
3
4
5
6
7
8
9
10
11
12
13
14

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LAUSTEVEION DELANO JOHNSON,

    *Petitioner*,

vs.

DWIGHT NEVEN, *et al.*,

    *Respondents.*

2:08-cv-01363-JCM-RJJ

ORDER

15   This represented habeas matter under 28 U.S.C. § 2254 comes before the court on
16 respondents' (#64) to dismiss.  Respondents contend that the petition, as amended, must be
17 dismissed because none of the claims therein are exhausted.  The overarching issue
18 presented is whether any of the proceedings filed in the state courts fairly presented and
19 exhausted any claims.

20                                                  ***Background***

21   Petitioner Lausteveion Johnson challenges his Nevada state conviction, pursuant to
22 a guilty plea, of sexual assault and attempted sexual assault with the use of a deadly weapon.
23 Petitioner's judgment of conviction was filed on July 15, 2004.  Petitioner did not file a direct
24 appeal.[1]

25   On or about May 12, 2005, Johnson mailed an original petition for an extraordinary writ
26 to the state supreme court clerk for filing.  The state supreme court denied the petition, in the

27 _____

28   [1] #59, Ex. 21.

1  manner discussed further *infra*, on August 24, 2005.  The court thereafter denied Johnson's
2  petition for rehearing, and the notice in lieu of remittitur issued on November 16, 2005.[2]

3       On or about November 21, 2007, petitioner mailed a motion to correct, reduce or set
4  aside an illegal sentence to the state district court clerk for filing.  The state district court
5  denied the motion on December 27, 2007, and petitioner mailed a notice of appeal for filing
6  within thirty days of the order, on January 8, 2008.  The notice of appeal was on a federal
7  form, although petitioner wrote in "Clark County," and the notice ostensibly sought to appeal
8  to the "United States Court of Appeals for the Ninth Circuit" from a judgment and sentence
9  imposed "by the District Court for the State of Nevada" on or about July 4, 2004.  It appears
10 that both the state district court and the state supreme court construed the notice of appeal
11 liberally as a timely appeal from the December 27, 2007, state district court order denying the
12 motion to correct sentence.  The state supreme court affirmed, in the manner discussed
13 further, *infra*, on July 16, 2008.  The remittitur issued on August 12, 2008.[3]

14      Meanwhile, on or about January 8, 2008, petitioner mailed a second motion to correct,
15 reduce or set aside an illegal sentence to the state district court clerk for filing.  The state
16 district court denied the second motion on February 6, 2008.  Petitioner did not file a notice
17 of appeal as to the denial of the second motion to correct sentence, at any time.[4]

18      Over seven months later, on or about September 18, 2008, petitioner mailed a notice
19 of appeal for filing.  This notice of appeal was on a state court form.  However, petitioner
20 sought to appeal thereby from a December 11, 2007, order denying a motion to correct
21 sentence, which lined up with the date that the state district court heard argument on and
22 stated that it would deny the *first* motion to correct sentence.  The state supreme court treated
23 this notice of appeal, based on the description of the order being appealed, as an appeal from

24

25      [2]#59, Exhs. 26, 28, 30, 31 & 32.

26      [3]#60, Exhs. 42, 45, 47, 57 & 58.  The online docket record of the state supreme court confirms that
27 Ex. 47 herein was filed as the precipitating notice of appeal for an appeal from the denial of the motion to
   correct sentence.

28      [4]#60, Exhs 48 & 51.

1   the December 27, 2007, order denying the first motion to correct sentence.  The state

2   supreme court dismissed the untimely appeal for lack of jurisdiction on December 30, 2008.[5]

3          Meanwhile, on or about May 29, 2008, petitioner mailed a state post-conviction petition

4   to the state district court clerk for filing.  The state district court denied the petition, and the

5   notice of entry of decision was filed on September 9, 2008.  Petitioner did not file a notice of

6   appeal from the denial of the petition within the thirty-day time period for doing so.[6]

7          On or about October 2, 2008, petitioner mailed the federal petition to the clerk of this

8   court for filing.  The court granted petitioner's motion for appointment of counsel on January

9   16, 2009, with the notice of appearance by the assistant federal public defender taking the

10  representation being filed on February 19, 2009.[7]

11         Over three years later, on March 13, 2012, petitioner, via an appearance in the state

12  district court by the federal public defender, filed a notice of appeal in the state district court.

13  The notice of appeal sought to appeal the state district court order noticed on September 9,

14  2008, denying the state court post-conviction petition.  Following a show cause order and

15  response thereto, the state supreme court dismissed the untimely appeal for lack of

16  jurisdiction on May 9, 2012.[8]

17         In sum, petitioner filed: (a) an original petition for an extraordinary writ in the state

18  supreme court; (b) a first motion to correct sentence with an appeal construed as a timely

19  appeal; (c) a second motion to correct sentence with no appeal; and (d) a state post-

20  conviction petition with an, extremely, untimely appeal.

21                              ***Governing Law***

22         Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court

23  remedies on a claim before presenting that claim to the federal courts.  To satisfy this

24

25         [5]#60, Exhs. 61 & 62; see also *id.*, Ex. 44.

26         [6]#60, Exhs. 54, 59 & 60.

27         [7]## 1, 7 & 11.

28         [8]#60, Ex. 67; #63, Exhs. 71-73.

-3-

1  exhaustion requirement, the claim must have been fairly presented to the state courts
2  completely through to the highest court available, in this case the state supreme court.  *E.g.,*
3  *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329
4  F.3d 1069, 1075 (9th Cir. 2003).  In the state courts, the petitioner must refer to the specific
5  federal constitutional guarantee and must also state the facts that entitle the petitioner to relief
6  on the federal constitutional claim.  *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir.
7  2000).  That is, fair presentation requires that the petitioner present the state courts with both
8  the operative facts and the federal legal theory upon which the claim is based.  *E.g., Castillo*
9  *v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).  The exhaustion requirement insures that
10 the state courts, as a matter of federal-state comity, will have the first opportunity to pass
11 upon and correct alleged violations of federal constitutional guarantees.  *See,e.g., Coleman*
12 *v. Thompson*, 501 U.S. 722, 731 (1991).

### Discussion

14 The court often addresses exhaustion issues in a claim-by-claim order directed to the
15 claims in the petition, as amended, in order.  As noted at the outset, however, the overarching
16 question in this case is whether any of the state proceedings exhausted any claims in the first
17 instance.  For the reasons discussed below, the court concludes that none of the state court
18 proceedings exhausted any claims relevant to the instant matter.  The court accordingly
19 discusses the exhaustion issues below on a proceeding-by-proceeding basis, *i.e.*, addressing
20 whether each particular state proceeding fairly presented and exhausted any federal claims.

#### Original Petition for an Extraordinary Writ

22 Presenting a claim in a procedural context in which the merits of the claim will not be
23 considered, or will be considered only in special circumstances, does not constitute fair
24 presentation of the claim for purposes of exhaustion.  *E.g., Castille v. Peoples*, 489 U.S. 346,
25 351 (1989).

26 A long line of well-established authority thus holds that a claim is not fairly presented
27 and is not exhausted when a petitioner fails to present the claim in state district court under
28 available state post-conviction procedures but instead presents the claim in an original

1   petition to the state's high court seeking to invoke an extraordinary discretionary jurisdiction

2   that only rarely if ever is exercised.  *See,e.g., Pitchess v. Davis*, 421 U.S. 482, 488 (1975);

3   *Ex parte Hawk*, 321 U.S. 114, 116 (1944);  *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir.

4   1994); *Sweet v. Cupp*, 640 F.2d 233, 238 (9th Cir. 1981).  *Accord Lindquist v. Gardner*, 770

5   F.2d 876 (9th Cir. 1985).

6          However, in *Chambers v. McDaniel*, 549 F.3d 1191 (9th Cir. 2008), the court of appeals

7   held that the language used by the Nevada state supreme court in rejecting the original

8   petition in that case did not unambiguously reflect that the disposition was on procedural

9   grounds rather than on the merits.

10         In *Chambers*, the state supreme court had issued a December 3, 2003, order denying

11   an extraordinary writ petition on the following grounds:

12                      This is a proper petition for an extraordinary writ.
                   Petitioner challenges the validity of his judgment of
13                 conviction and sentence. We have considered the petition
                   on file herein, and we are not satisfied that this court's
14                 intervention by way of extraordinary relief is warranted at
                   this time.  Accordingly, we
15
                   Order the petition DENIED.[FN1]
16
                   [FN1]   We have considered all proper
17                 person documents filed or received in this
                   matter, and we conclude that the relief
18                 requested is not warranted.

19   *See* 549 F.3d at 1196; *see also id.* at 1195 (date of order).

20         *Chambers* held that the use of the foregoing language constituted a disposition in the

21   merits, *i.e.*, not an unambiguous disposition instead on a procedural ground, thereby

22   exhausting the claims in the original petition. 549 F.3d at 1196-99.  The court of appeals held

23   that the state supreme court's order constituted a disposition on the merits because the state

24   supreme court stated in the body of the order that "[w]e have considered the petition on file

25   herein, and we are not satisfied that this court's intervention by way of extraordinary relief is

26   warranted at this time."  In addition, the state supreme court had stated in the footnote that

27   "[w]e have considered all proper person documents filed or received in this matter, and we

28   conclude that the relief requested is not warranted."  549 F.3d at 1195-99.

1    In the present case, the state supreme court's August 24, 2005, order instead stated:

> This is a proper person petition for extraordinary relief. Citing to Article 6, Section 4 of the Nevada Consitution, petitioner challenges the validity of his judgment of conviction and requests this court to consider his claims on the merits.

> This court has held that it "*will not exercise its original jurisdiction to consider* a writ petition in a criminal case raising claims that could or should have been raised in an appeal or in an appropriate post-conviction proceeding in the district court."[FN1] We have reviewed the documents before this court, *and we decline to exercise this court's original jurisdiction in this matter.* Petitioner may raise his claims in a post-conviction petition for a writ of habeas corpus filed in the district court.[FN2] Petitioner may appeal to this court from a final, adverse decision.[FN3]  Accordingly, we

> Order the petition DENIED.[FN4]

> [FN1] Hosier v. State, 121 Nev. ___, ___, ___ P.3d ___, ___ (Adv. Op. No. 41, August 11, 2005).

> [FN2] See NRS 34.724(2)(b);  NRS 34.738(1).  We express no opinion as to whether petitioner could satisfy the procedural requirements of NRS chapter 34.

> [FN3] NRS 34.575(1).

> [FN4]      We have *received* all proper person documents submitted in this matter, and we conclude that no relief is warranted *for the reason set forth above*.  We *caution* petitioner that a prisoner may forfeit all deductions of time earned by the prisoner if the court finds that the prisoner has filed a document in a civil action and the document contains a claim or defense included for an improper purpose, the document contains a claim or defense not supported by existing law or a reasonable argument for a change in existing law, or the document contains allegations or information presented as fact for which evidentiary support is not available or is not likely to be discovered after further investigation.  See NRS 209.451(1)(d); Hosier, 121 Nev. at ___, . . . .  A petition for a writ of habeas corpus is a civil action for purposes of this statute.  NRS 209.451(5).

#59, Ex. 28 (italic emphasis added).

1    The state supreme court thus used language in denying Johnson's petition that the

2    court of appeals in *Chambers* found, in contrast to the order reviewed in that case, "clearly

3    and unambiguously den[ied] a petition for an extraordinary writ on procedural grounds."  As

4    the *Chambers* panel explained:

5

6         Finally, the language used by the Nevada Supreme Court
          in other cases involving petitions for extraordinary writs is
          illuminating.  In *Hosier v. State*, 121 Nev. 409, 117 P.3d 212, 213

7         (2005)(per curiam), a decision filed two years after Chambers'
          petition for an extraordinary writ was denied, the Nevada

8         Supreme Court held that "[a]lthough this court retains original
          jurisdiction to issue writs, this court will not exercise its original

9         jurisdiction to consider a writ petition in a criminal case raising
          claims that could or should have been raised in an appeal or in an

10        appropriate post-conviction proceeding in the district court."  The
          court then concludes: "we decline to exercise this court's original

11        jurisdiction to consider this original petition challenging the validity
          of the judgment of conviction."  *Id.*  What is clear from *Hosier* is

12        that the Nevada Supreme Court is capable of clearly and
          unambiguously denying a petition for an extraordinary writ on

13        procedural grounds and that, when it does so, the court will state
          that it "decline[s] to exercise its original jurisdiction to consider"

14        the petition.

15   549 F.3d at 1198.

16        In the present case, as in *Hosier*, the state supreme court expressly declared that "we

17   decline to exercise this court's original jurisdiction in this matter."  Indeed, the court cited to

18   *Hosier* as its supporting authority for not doing so, citing *Hosier* for the proposition that the

19   state supreme court "*will not exercise its original jurisdiction to consider* a writ petition in a

20   criminal case raising claims that could or should have been raised in an appeal or in an

21   appropriate post-conviction proceeding in the district court."

22        Accordingly, under nearly seven decades of established jurisprudence, including the

23   analysis in *Chambers*, the state supreme court "clearly and unambiguously" denied Johnson's

24   petition for an extraordinary writ on procedural grounds rather than on the merits.  The

25   petition, under well-established law, did not fairly present and exhaust any claims.[9]

26   _____

27        [9]The statement in footnote 4 of the state supreme court order reinforces the conclusion that the state
     supreme court did not consider the merits.  The court stated only that it had "received" the proper person

28                                                                                          (continued...)

                                              -7-

1

***First Motion to Correct Sentence***

2      The state supreme court affirmed the denial of Johnson's first motion to correct, reduce

3   or set aside an illegal sentence in pertinent part on the following grounds:

4

5          In his motion, appellant claimed that the district court
       improperly imposed the deadly weapon enhancement because in
       entering his plea he did not admit to facts supporting the deadly
6      weapon enhancement or waive a jury trial on the issue of the
       deadly weapon enhancement.   Appellant further claimed that
7      consecutive sentences violated double jeopardy.   Finally,
       appellant claimed that he received ineffective assistance of
8      counsel and his plea was not entered voluntarily and knowingly.

9          A motion to correct an illegal sentence may only challenge
       the facial legality of the sentence: either the district court was
10     without jurisdiction to impose a sentence or the sentence was
       imposed in excess of the statutory maximum.   "A motion to
11     correct an illegal sentence '*presupposes a valid conviction and
       may not, therefore, be used to challenge alleged errors in
12     proceedings that occur prior to the imposition of sentence*.'"  A
       motion to modify a sentence "is limited in scope to sentences
13     based on mistaken assumptions about a defendant's criminal
       record which work to the defendant's extreme detriment."   A
14     motion to correct or modify a sentence that raises issues outside

15   _____

16   [9](...continued)
     documents filed and that it concluded that no relief was warranted "for the reason set forth above."  The sole
17   reason stated in the text of the order for not providing relief was that the court declined to exercise its original
     jurisdiction in the matter, under the court's well-established rule that it did not exercise its original jurisdiction
18   to consider a writ petition raising claims that could or should have been raised on direct appeal or in a state
     post-conviction petition.
19
          This court also notes that the state supreme court, as it had done in *Hosier*, cautioned the petitioner
20   as to the prospect of the court imposing sanctions for the filing of such an original petition.  This caution that
     sanctions could be imposed for such a filing further reinforces the conclusion that the court was not reaching
21   the merits on what the court was suggesting was a potentially sanctionable procedural effort to invoke its
     original jurisdiction.
22
          Further, as a collateral point, the claims in grounds 1, 2 and 3 in the amended petition that petitioner
23   contends were exhausted by the original petition for an extraordinary writ clearly did not constitute strictly
     questions of law that did not potentially require evidentiary and factual determination.  They instead were fact-
24   intensive claims challenging the effectiveness of defense counsel, the voluntariness of Johnson's plea, and
     his competence at the relevant time.  The type of claims involved thus lay at the core of the policy reason
25   articulated in *Hosier* for the state high court's rule in this regard.  *Cf. Chambers*, 549 F.3d at 1199 (discussing
     application of *Hosier*'s rationale where the claim instead was one of *Kazalyn* instruction error).  This point is a
26   collateral one, however, because, regardless of the underlying policy reasons expounded upon in *Hosier* for
     the state supreme court's rule in this regard, once the state supreme court unambiguously indicates that it
27   has declined to exercise its original jurisdiction to consider the extraordinary petition, that is the end of the
     matter.  That has been the law since at least the 1944 decision in *Ex parte Hawk*.
28

the very narrow scope of issues permissible may be summarily denied.

Our review of the record on appeal reveals that the district court did not err in denying the motion.  *Appellant's claims fell outside the scope of claims permissible in a motion to correct an illegal sentence and a motion to modify a sentence.*  Appellant's sentence was facially legal, and appellant failed to demonstrate that the district court was not a competent court of jurisdiction. Appellant failed to demonstrate that his sentence was based upon a mistaken assumption about his criminal record that worked to his extreme detriment.  Moreover, as a separate and independent ground to deny relief, appellant's claims *relating to the deadly weapon enhancement* were without merit.  In entering his guilty plea to attempted sexual assault with the use of a deadly weapon, appellant admitted to the facts supporting the elements of the offense and expressly waived his right to a jury trial; thus, the district court properly imposed the deadly weapon enhancement.[FN6] Therefore, we affirm the order of the district court denying the motion.

> [FN6] See Blakely v. Washington, 542 U.S. 296, 303 (2004) (stating that precedent makes it clear that the statutory maximum that may be imposed is "the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.</u>")(emphasis in original).

#60, Ex. 57, at 2-3 (italic emphasis added)(state authority citation footnotes omitted).

Again, presenting a claim in a procedural context in which the merits of the claim will not be considered, or will be considered only in special circumstances, does not constitute fair presentation of the claim for purposes of exhaustion.  *Castille, supra.*

Here, the state supreme court clearly held that Johnson's claims "fell outside the scope of claims permissible in a motion to correct an illegal sentence and a motion to modify a sentence."  The court did address the merits of Johnson's *Blakely* claim concerning the deadly weapon enhancement, which perhaps would have exhausted such a claim.[10] However, the federal amended petition contains no such claim, quite likely because such a

---

[10]*See,e.g., Chambers*, 549 F.3d at 1196.  A state court may consider the merits as a separate and independent ground without undercutting the application of a state procedural bar.  However, alternative consideration of the merits of an improperly-presented claim will exhaust the claim.  The state supreme court was not applying a state procedural bar to the claims but instead was holding that the claims were not presented in a proper procedural vehicle.

-9-

1  claim plainly is without merit.  Claims of ineffective assistance of counsel and of an involuntary

2  guilty plea fell outside the scope of claims permissible on the motion and therefore were not

3  fairly presented by inclusion in such a motion.

4         The first motion to correct sentence therefore did not exhaust any claim presented in

5  the federal amended petition because: (a) the only claim considered on the merits therein,

6  the *Blakely* claim, is not included in the amended petition; and (b) the claims of ineffective

7  assistance of counsel and of an involuntary plea in the motion were not properly presented

8  via that procedural vehicle.[11]

9         ***Second Motion to Correct Sentence***

10        Petitioner never appealed the state district court denial of the second motion to correct,

11  reduce or set aside an illegal sentence.  To the extent that petitioner intimates otherwise

12  herein, any such suggestion is refuted by the record.  The notice of appeal filed on September

13  30, 2008, expressly was directed to the December 2007 order denying the *first* motion to

14  correct sentence, and it was so construed by the state supreme court in dismissing that

15  particular appeal as untimely.[12]  There, again, simply was no notice of appeal ever filed

16  directed instead to the denial of the *second* motion to correct.  It is axiomatic that a claim must

17  be fairly presented completely through to the state supreme court to be exhausted.  *E.g.,*

18  *Peterson, supra; Vang, supra*.  None of the claims in the second motion to correct sentence

19  ever have been presented to the state supreme court, via any vehicle.  None of the claims

20  therein have been exhausted.[13]

21  _____

22        [11]Petitioner relies on the motions to correct sentence for the exhaustion of claims of ineffective
23  assistance of counsel and involuntary guilty plea in grounds 1 and 2.  See #58, at 11 & 15.  This court
    expresses no opinion as to the correlation, if any, between the claims in the two state court motions and
24  those in the federal amended petition.  The motions to correct simply did not exhaust any such claims even if,
    *arguendo*, otherwise correlated.  The motions were not a proper procedural vehicle for such claims.

25        [12]See text and record citations, *supra*, at 2-3.

26        [13]If the second motion had been appealed and had been resolved in the manner described herein as
27  to the first motion, then the preceding discussion regarding the first motion then also would have been fully
    applicable to the second motion as well.  If, on the other hand, the second motion had been untimely
28                                                                                      (continued...)

-10-

1  ***Untimely Appeal of State Post-Conviction Petition***

2       As outlined in the procedural background, petitioner mailed a state post-conviction

3  petition for filing on or about May 29, 2008, but he did not thereafter appeal the denial of the

4  petition on or about September 9, 2008.  He mailed the federal petition for filing on or about

5  October 2, 2008.  The court thereafter granted petitioner's motion for appointment of counsel,

6  with the federal public defender entering a notice of appearance on February 19, 2009.  Over

7  three years later, on March 13, 2012, petitioner, via an appearance in the state district court

8  by the federal public defender, filed a notice of appeal in the state district court.

9       As noted in passing in the procedural background, the state supreme court directed

10 petitioner to show cause why the appeal should not be dismissed for lack of jurisdiction.  The

11 supreme court referred to prior authority holding that an untimely notice of appeal fails to vest

12 jurisdiction in the court.[14]

13      In response, petitioner, through federal habeas counsel, urged that he had "good

14 cause" for failing to file a timely notice of appeal because of alleged mental illness.  He

15 maintained:

16           Johnson, an incompetent petitioner, was incapable of
         complying with the procedural requirement in this matter to file a
17       timely notice of appeal.  He has no available remedy to achieve
         review of the merits of the claims in his state habeas petitioner,
18       other than by filing an untimely notice of appeal.  Any subsequent
         habeas petition in the lower state court will result in the
19       application of several procedural bars to these grounds. See NRS
         34.726; NRS 34.810; NRS 34.800.  Johnson therefore requests
20       that this Court exercise its jurisdiction over this matter and accept
         the notice of appeal.

21 #63, Ex. 72, at 3.  Petitioner attached over 100 pages of exhibits in support of the show-cause

22 response, although the documents merely were copies of prior filings with no medical

23

24 evidence directed specifically to the appeal period in and after September 2008.

25       [13](...continued)

26 appealed, then the discussion in the following section regarding untimely appeals would have been applicable
   here as well.  The overriding point, however, is that *petitioner never appealed the denial of the second motion,*

27 *whether timely or otherwise.*  He simply never appealed the denial of the motion.

28       [14]#63, Ex. 71.

1    On May 9, 2012, the state supreme court dismissed the appeal for lack of jurisdiction.

2  The court stated in pertinent part:

3

4    . . . .  In response [to the show-cause order], appellant
     suggests that he had good cause to file the notice of appeal more

5    than three years after notice of entry of the order had been
     served. Specifically, he points to his long history of mental illness

6    and the pretrial finding of incompetence, arguing that he "was
     incapable of complying with the procedural requirement in this

7    matter to file a timely notice of appeal." Unlike, the procedural
     default provisions cited by appellant that apply to post-conviction

8    habeas petitions, NRS 34.726; NRS 34.800; NRS 34.810, there
     are no good cause provisions to excuse the untimely filing of a

9    notice of appeal, NRS 34.575(1); NRAP 4(b). Cf. Gonzales v.
     State, 118 Nev. 590, 595, 53 P.3d 901, 903 (2002)("*[U]nlike the*

10   *strict jurisdictional time limits for filing notice of appeal, the
     one-year time limit for filing a post-conviction habeas petition may*

11   *be excused by a showing of good cause and prejudice.*"). And
     the time to file a notice of appeal cannot be enlarged by this

12   court. NRAP 26(b). "The filing of a timely notice of appeal is a
     fundamental jurisdictional requirement; without it, this court never

13   obtains jurisdiction over an appeal and *has not power to consider
     the issues raised*. . . ." Dickerson v. State, 114 Nev. 1084, 1087,

14   967 P.2d 1132, 1134 (1998). Because the notice of appeal was
     not timely filed, *we lack jurisdiction* and therefore

15    ORDER this appeal DISMISSED.

16  #63, Ex. 73, at 1-2 (italic emphasis added).

17    Again, as discussed at length herein, in order to exhaust a claim, a habeas petitioner

18  must fairly present the claim (a) completely through to in this instance the state supreme court

19  (b) via a procedural vehicle in which the merits of the claim will be considered rather than via

20  a procedural vehicle in which the merits will be considered at best in only special

21  circumstances. Johnson's attempted presentation of claims via a notice of appeal that was

22  untimely by more than three years, plainly, failed to present claims to the state supreme court

23  via a procedural vehicle in which the merits of the claims could be considered, much less

24  would be considered. Presenting claims to a court via a procedural vehicle over which it has

25  no jurisdiction represents the epitome of a failure to fairly present claims.

26    Petitioner nonetheless urges that the March 2012 untimely appeal – over which the

27  state supreme court had no jurisdiction – exhausted claims in the amended petition.

28  Petitioner recasts the dismissal of the untimely appeal instead as the "purported invocation

-12-

of a procedural bar" and maintains that the dismissal of the years-late untimely appeal "[a]t most, presents an issue of procedural default."  He maintains that he has no remaining recourse in the state courts because his claims would be procedurally barred in a state post-conviction petition. Yet he nonetheless maintains that he can overcome any such procedural default on federal review because, *inter alia*, he can show cause and prejudice, notwithstanding the fact that the Nevada state courts apply substantially the same standards as do the federal courts in determining whether to disregard a procedural bar.[15]

The court acknowledges the creativity of habeas counsel, but the filing of the untimely appeal in truth does not add anything of substance to the exhaustion analysis in this case. If, as discussed below, petitioner *arguendo* indeed has no remaining recourse in the state courts via a state post-conviction petition due to procedural bars, then he did not need to file a patently untimely appeal over which the state supreme court had no jurisdiction for his claims to be exhausted.  If, on the other hand, petitioner can present the same cause-and-prejudice arguments to the state courts in a state post-conviction petition that he now maintains that the federal courts should find meritorious, then he may not simply bypass that potentially viable procedure to instead pursue his claims in an untimely appeal over which the state supreme court clearly did not have jurisdiction.  To allow a petitioner to "exhaust" a claim by bringing a proceeding over which the state court has no jurisdiction, rather than "coming in through the front door" in a state post-conviction proceeding where his cause-and-prejudice arguments may be considered, would stand the exhaustion doctrine – and the comity and federalism concerns that inform that doctrine – on its head.  The years-late untimely appeal plainly did not provide the state supreme court with a realistic opportunity to  consider either the merits of the claims or the potential application of state procedural bars because the court simply had no jurisdiction to consider any such issues.  Again, if petitioner had no other available procedure to pursue the claims, then it would be that fact, and not the filing of a plainly non-viable untimely appeal, that would render the claims exhausted.

_____

[15]#65, at 2-6 & n.2.

-13-

1    This distinction is critical because the Nevada state courts apply substantially the same

2    standards for avoiding procedural bars to a state post-conviction petition as do the federal

3    courts.  Under Nevada state practice, "[a] petitioner can overcome the bar to an untimely or

4    successive petition by showing good cause and prejudice." *E.g., Mitchell v. State*, 149 P.3d

5    33, 36 (Nev. 2006).  In *Robinson v. Ignacio*, 360 F.3d 1044 (9th Cir. 2004), the court of

6    appeals recognized that "Nevada's 'cause and prejudice' analysis and the federal 'cause and

7    prejudice analysis' are nearly identical, as both require 'cause for the default and actual

8    prejudice as a result.'" 360 F.3d at 1052 n.3.  Moreover, the Nevada state courts also

9    recognize the same exception for a fundamental miscarriage of justice, such that "[e]ven

10   when a petitioner cannot show good cause sufficient to overcome the bars to an untimely or

11   successive petition, habeas relief may still be granted if the petitioner can demonstrate that

12   'a constitutional violation has probably resulted in the conviction of one who is actually

13   innocent.'" *Mitchell*, 149 P.3d at 36 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

14        This court therefore has held, in numerous prior cases, that it will not find a claim

15   exhausted based upon the claim being procedurally barred in the state courts absent

16   unequivocal stipulations: (1) that the petitioner cannot avoid dismissal of the claim in the state

17   courts because he cannot demonstrate cause and prejudice in the state courts to overcome

18   the state procedural bars; (2) that petitioner cannot avoid dismissal of the claim in the state

19   courts because he cannot demonstrate that the alleged constitutional violation has probably

20   resulted in the conviction of one who is actually innocent; and (3) that the procedural bars

21   otherwise are now consistently applied by the Nevada state courts, such that it is not possible

22   that the state courts, as a discretionary matter, would consider the claim despite the

23   procedural default and despite a failure to demonstrate either cause and prejudice or actual

24   innocence.  In the absence of such concessions, the court has declined to hold that there is

25   no possibility that unexhausted claims would be considered by the Nevada state courts.

26        Petitioner has made no such concessions here.  He instead urges that he can establish

27   cause and prejudice because he was denied counsel in his prior state court proceedings and

28   further because he was subjected to the alleged external impediment of a "renegade" inmate

-14-

1  law clerk who either was not reined in or could not be reined in by state correctional officials.

2  If petitioner can make these arguments in federal court, he can present them as well in state

3  court through an available state process where such arguments will be considered.  He plainly

4  did not exhaust his claims by instead opting to pursue, through counsel, a procedure – an

5  untimely appeal – over which it was abundantly clear that the state supreme had no

6  jurisdiction to consider either his claims or his cause-and-prejudice arguments.

7         Petitioner relies upon the decision in *Maples v. Thomas*, 132 S.Ct. 912 (2012), but

8  *Maples* is entirely consistent with the analysis herein.  In *Maples*, the court held that cause

9  existed for the procedural default of the capital defendant's claims.  The court held that cause

10 existed because petitioner's large-firm *pro bono* state post-conviction counsel abandoned him

11 by failing to provide notice of their change of address after leaving the firm, resulting in his

12 failure to timely appeal the denial of his state post-conviction petition.  Significantly, the

13 supreme court granted the *certiorari* petition solely as to the procedural default issue, and

14 there was no contested exhaustion issue presented for the court to decide.[16]  Even more

15 significantly, the court of appeals did not hold that the claims were exhausted either on the

16 ground that an untimely post-conviction appeal fairly presented claims for consideration on

17 the merits in Alabama or on the ground that the rejection of such an appeal constituted a

18 "purported invocation of a procedural bar."  The court of appeals instead concluded that

19 "Maples did not properly exhaust [the] claims in state court" but that "because any further

20 attempts by Maples to exhaust those claims in state court would be futile, Maples's

21 *unexhausted* claims are procedurally defaulted."  *Maples v. Allen*, 586 F.3d 879, 886 (11th Cir.

22 2009)(emphasis added), *reversed on other grounds*, *Maples, supra*.  Thus, it was the absence

23 of other state corrective process, not the efforts to pursue an untimely appeal, that rendered

24 the claims in *Maples* technically exhausted by procedural default.  Neither the court of

25 appeals nor the supreme court held that an untimely appeal exhausts any claims.

26

27 _____

28      [16]*Compare* 2010 WL 2727329 (*certiorari* petition) with *Maples v. Thomas*, 131 S.Ct. 1718 (2011)
(grant of *certiorari* "limited to Question 2 presented by the petition").

1    Here, the potential for consideration of petitioner's cause-and-prejudice arguments on

2    Nevada state post-conviction review readily distinguishes the present case from the decision

3    of the court of appeals in *Maples* on the exhaustion issue, which was not presented as a

4    contested issue on *certiorari* review.

5    Petitioner's reliance upon *Gonzalez v. McDaniel*, 2005 WL 1994414 (9th Cir., Aug. 5,

6    2005), similarly is misplaced.  At the very outset, counsel has violated Ninth Circuit Rule 36-3

7    by citing the case.  Ninth Circuit Rule 36-3 states that "[u]npublished dispositions and orders

8    of this Court issued before January 1, 2007 may not be cited to the courts of this circuit,

9    except [in enumerated specific circumstances not present here]."  *Gonzalez* was issued

10   before January 1, 2007, and the order therefore may not be cited to a court within the circuit.

11   In any event, the unpublished – and thus by definition non-precedential – terse decision in

12   *Gonzalez* concluded that there was no other state remedy available without any explicit

13   discussion of the substantial similarity between the state and federal standards for

14   overcoming a procedural default.  The unpublished decision did not explicitly take into

15   account the published – and thus precedential – decision in *Robinson* recognizing that the

16   Nevada state and federal standards for overcoming a procedural default are nearly identical.

17   Moreover, the Ninth Circuit followed substantially the same analysis as this court has followed

18   herein in *Jones v. McDaniel*, 2009 WL 890915 (9th Cir., Apr. 2, 2009), holding that the

19   petitioner had not established futility of exhaustion given the substantial similarity of Nevada

20   state and federal standards to overcome a procedural bar.  The 2009 decision in *Jones*, while

21   unpublished, properly may be cited under Rule 36-3 as persuasive authority.

22   The court accordingly holds that the years-late untimely state court appeal did not fairly

23   present and exhaust any claims.  The court further holds that petitioner has not persuasively

24   established that he may not pursue the same cause-and-prejudice arguments that he seeks

25   to purse here in this court instead in a state post-conviction petition.

26   Petitioner accordingly has failed to demonstrate that any of the four state proceedings

27   relied upon herein fairly presented and exhausted any of the claims in the federal petition, as

28   amended.  Under established law, when the federal petition is wholly unexhausted, the matter

-16-

1    must be dismissed immediately for lack of exhaustion.  *See, e.g., Rasberry v. Garcia*, 448 F.3d

2    1150 (9th Cir. 2006); *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir.2001).  The petition therefore

3    will be dismissed without prejudice for lack of exhaustion.

4            ***Consideration of Possible Issuance of a Certificate of Appealability***

5            Under Rule 11 of the Rules Governing Section 2254 Cases, the district court must

6    issue or deny a certificate of appealability when it enters a final order adverse to the

7    petitioner.  As to claims rejected on procedural grounds, the petitioner must show: (1) that

8    jurists of reason would find it debatable whether the petition stated a valid claim of a denial

9    of a constitutional right; and (2) that jurists of reason would find it debatable whether the

10    district court was correct in its procedural ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484

11    (2000).  While both showings must be made to obtain a certificate of appealability, "a court

12    may find that it can dispose of the application in a fair and prompt manner if it proceeds first

13    to resolve the issue whose answer is more apparent from the record and arguments."  529

14    U.S. at 485.  Where a plain procedural bar is properly invoked, an appeal is not warranted.

15    529 U.S. at 484.

16            For the reasons discussed herein, jurists of reason would not find the dismissal of the

17    wholly unexhausted petition without prejudice for lack of exhaustion to be debatable or wrong.

18            None of the four state court proceedings relied upon exhausted any claim in the federal

19    petition, as amended.

20            The original petition for an extraordinary writ did not fairly present any claims, under

21    established law spanning back nearly seven decades, including the more recent decision in

22    *Chambers v. McDaniel*, 549 F.3d 1191 (9th Cir. 2008).  See text, *supra*, at 1-2 & 4-7.

23            The first motion to correct sentence did not fairly present any claims given the limited

24    scope of such a motion under state practice, with the sole exception of a claim that is not

25    included in the federal petition as amended.  See text, *supra*, at 2 & 8-10.

26            The second motion to correct sentence did not fairly present any claims for the simple

27    reason that the denial of the motion never was appealed to the state supreme court.  See

28    text, *supra*, at 2 & 10.

1    The years-late untimely appeal from the denial of the state post-conviction petition did

2    not fairly present any claims to the state supreme court because the state supreme court does

3    not have jurisdiction to consider the merits of such an untimely appeal.  Petitioner further has

4    failed to demonstrate that there is no other available state court process in which he may

5    pursue his claims and cause-and-prejudice arguments, given the substantial similarity

6    between the federal and Nevada state standards for overcoming the potential procedural

7    default of a claim.  See text, *supra*, at 3 & 11-17.

8        A certificate of appealability therefore will be denied.

9        IT THEREFORE IS ORDERED that respondents' motion (#64) to dismiss is GRANTED

10   and that the petition shall be DISMISSED without prejudice as completely unexhausted.

11       IT FURTHER IS ORDERED that a certificate of appealability is DENIED.  See text,

12   *supra*, at 17-18, and discussion referenced therein.

13       The clerk of court shall enter final judgment accordingly, in favor of respondents and

14   against petitioner, dismissing this action without prejudice.

15       DATED:   July 26, 2012.

16

17

18       JAMES C. MAHAN
         United States District Judge

19

20

21

22

23

24

25

26

27

28

-18-